IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| JOSH BELKNAP § | |
| and KATHERINE BOLAND BELKNAP § | |
| § | |
| V. § | CIVIL ACTION NO. G-12-198 |
| § | |
| BANK OF AMERICA, N.A., ET AL. § | |

## OPINION AND ORDER

Before the Court, by consent of the Parties under 28 U.S.C. § 636(c), is the request of Plaintiffs, Josh and Katherine Belknap, for the issuance of a Preliminary Injunction enjoining the Defendants, Bank of America, N.A. (BOA), ReconTrust Company, N.A. (ReconTrust) and Wells Fargo Bank, NA. (Wells Fargo), from foreclosing on their residential property in Galveston County, Texas.[1] On July 12, 2012, this Court conducted an Evidentiary Hearing on the Plaintiffs' request. Having now carefully reviewed the pleadings and the evidence, this Court issues this Opinion and Order.

On December 3, 2004, Plaintiffs purchased their home for $80,000.00 by executing an Adjustable Rate Note and a Deed of Trust; their original monthly payments were $569.82. At all relevant times, the Note and Deed of Trust were held by Wells Fargo and BOA acted as the mortgage servicer.

---

[1] The legal description of the property in the relevant documents indicate the property is in Alvin, Texas, but it is not. The property is in a part of Galveston County often referred to as Algoa, Texas.

On April 1, 2010, Plaintiffs requested a loan modification to secure a fixed rate of interest on their loan. They received the modification package from BOA, completed it and returned it. For the following ten (10) months the Plaintiffs contacted BOA periodically about the modification and were told it was under review. According to Plaintiffs, they were told to suspend their regular house payments during the review period. Notwithstanding, BOA declared their Note to be in default and posted their home for foreclosure in April 2011. In response, Plaintiffs, *inter alia*, hired counsel who discovered the foreclosure had been erroneously posted in Brazoria County. The foreclosure sale was then cancelled.

On May 24, 2011, despite the foregoing, BOA sent the Plaintiffs a 3-month Loan Modification Trial Period Plan, effective June 1, 2011, which promised them a permanent modification of their loan if they made trial period payments of $947.08 per month and "signed and returned the final Modification Agreement which will be sent once you have completed your trial payments." Plaintiffs completed their trial payments, but BOA did not send them a final Modification Agreement. Plaintiffs paid the October 1 "trial payment" and also inquired about the final Agreement. Finally, on October 12, 2011, Plaintiffs received a Rate Change Notice which, on its face, warned that "this letter is null and void if the properly signed and executed Modification Documents are not returned by October 11, 2011." The Rate Change Notice arrived from FedEx and was scheduled for standard overnight delivery on October 12, 2011, one day *after* its required return date.[2] Understandably, Plaintiffs promptly contacted BOA. They were told

---

[2] From the testimony of Katherine Belknap, it is not clear whether the proposed "Loan Modification Agreement" introduced as Defendants' Exhibit No. 2, was even included in the FedEx envelope the Plaintiffs received. Unlike the Rate Change Notice, it was not attached as an exhibit to the Plaintiffs' Original Petition.

2

to continue making the monthly trial payments, which they did. Several payments disputes arose, but BOA continued to accept the monthly payments. However, on February 22, 2012, Plaintiffs received a check from BOA in the amount of $5,730.00 which BOA claimed was the return of insufficient partial payments on their delinquent loan. Plaintiffs contacted BOA and tried to resolve the apparent problem; they even sent a payment to BOA for March, 2012. Unfortunately, on April 10, 2012, Plaintiffs were told their loan was in foreclosure and set for sale on June 5, 2012.

On May 24, 2012, Plaintiffs filed suit in state court, procured a Temporary Restraining Order and posted the court-required bond. The June 5, 2012, foreclosure sale was cancelled. The TRO was then extended on June 6, 2012, until June 20, 2012. On June 29, 2012, the Defendants removed the case to this Court. No preliminary injunctive relief was promptly sought by Plaintiffs and the Defendants again posted the property for sale at foreclosure on August 7, 2012. It is this foreclosure sale that the Plaintiffs now hope to enjoin.

Plaintiffs Original Petition seeks, *inter alia*, a declaration that they are not in default on their payment obligations under the Note and an injunction against a foreclosure. At the commencement of the Hearing, this Court questioned whether the Plaintiffs have alleged any underlying cause of action to support declaratory or injunctive relief and gave Plaintiffs the opportunity to amend their Petition to specifically identify the cause of action giving rise to an actual controversy between the Parties. Unfortunately, Plaintiffs have elected to rely on their current allegations which they claim, in a Memorandum of Law filed on July 18, 2012, sufficiently allege a claim that the Defendants breached the terms of the Promissory Note.

This Court might be hard pressed to divine a *prima facie* breach of contract claim from Plaintiffs' allegations, however, it sees no need to dwell on the issue. The appropriate test is whether the facts alleged support **any** potentially valid claim to relief, not necessarily the claim intended by the Plaintiffs. See Alvarez v. Hill, 518 F.3d 1152, 1158 (9th Cir. 2008); McBeth v. Hines, 598 F.3d 708, 716 (10th Cir. 2010)   In addressing the adequacy of the Plaintiffs' Petition, this Court must still accept as true all factual allegations of the Plaintiffs and draw all reasonable inferences from those facts in their favor, Twombly[3] has not changed this. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009)   Even if recovery by the Plaintiffs on a potential claim is very remote or unlikely, the claim is still cognizable at this stage of the litigation. Twombly, 550 U.S. at 556 (citing Scheur v. Rhodes, 416 U.S. 232, 236 (1974)

Although courts will not routinely search for "hidden" claims in a plaintiff's petition, Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999), this Court feels compelled to do so here, given the harm a foreclosure would inflict on these Plaintiffs. In doing so, this Court can consider not just the allegations within the Petition, it can consider documents attached to the Petition as well. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 986 F.2d 1542, 1555 (9th Cir. 1990)   After carefully reviewing the facts recited in the affidavit of Katherine Belknap attached to the Original Petition and the documents attached and produced at the Hearing, this Court believes Plaintiffs can pursue, at this juncture, a claim for promissory estoppel related to the Modification Agreement and the Defendants' refusal of same. The elements of a promissory estoppel claim are:  1) a promise; 2) reliance thereon that was foreseeable to the

---

[3] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)

promisor; and 3) substantial reliance by the promisee to his detriment.  Miller v. Raytheon Aircraft Co., 229 S.W.3d 358, 378-79 (Tex. App. -- Houston [1st Dist] 2007, no pet.) (citing English v. Fisher, 660 S.W.2d 521, 524 (Tex. 1983)   In the instant case, after the Plaintiffs ceased note payments during their application review period, at BOA's instruction, BOA promised to enter into a Modification Agreement if Plaintiffs complied with the Trial Period Plan.  Plaintiffs reliance on that promise was certainly foreseeable to BOA and Plaintiffs complied with the Plan by making the increased payments for the 3-month trial period.  Under Plaintiffs' facts, BOA failed to honor its promise by rendering Plaintiffs' performance - signing and returning the Modification Agreement by October 11, 2011, - impossible.

    While not necessarily a pleading element, estoppel also requires a showing that "injustice can be avoided only by the enforcement of the promise."  Zenor v. El Paso Health Care Systems, Ltd., 176 F.3d 847, 864 n.11 (5th Cir. 1999)   Here it would arguably be unjust to allow BOA to withhold the Agreement and foreclose on Plaintiffs' home.  Of course, in a case like this, the Statute of Frauds can be fatal to a promissory estoppel claim, however, where the Plaintiffs can show that the Defendant promised to sign an Agreement satisfying the Statute of Frauds, promissory estoppel may still lie.  "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 937 (Tex. 1972)   In this case, the Final Modification Agreement prepared by BOA for execution by Plaintiffs would, in this Court's opinion, satisfy the Statute of Frauds.

    Having determined that the Original Petition states a claim to support a request for declaratory relief, the Court now turns to the Plaintiffs' request for a preliminary injunction.  To merit the imposition of a preliminary injunction, the Plaintiffs must establish:  1) that they are likely to succeed on the merits of their claim(s); 2) that they are likely to suffer irreparable harm

in the absence of a preliminary injunction; 3) that the balance of equities is in their favor; and, if relevant, 4) that a preliminary injunction is in the public interest.  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)    The loss of Plaintiffs home would cause irreparable injury.  Cf. Sundance Land Corp. v. Community First Federal Savings & Loan Ass'n, 840 F.2d 653, 661 (9th Cir. 1988)    But irreparable injury, alone, will not support equitable relief; in fact, the likelihood of success is the "main bearing wall" of the test.  Ross-Simons of Warwick, Inc. v. Baccarat, 102 F.3d 12, 16 (1st 1996)    Just "(h)ow strong a claim on the merits is enough depends on the balance of harm:  the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."  Hoosier Energy Rural Electric Cooperative, Inc. v. John Hancock Life Insurance Co., 582 F.3d 721, 725 (7th Cir. 2009)    In the opinion of the Court, the Plaintiffs position on the merits is strong enough to presently support a preliminary injunction while this litigation progresses.  Moreover, it is doubtful that the Defendants will not remain adequately secured for the foreseeable future.  Since the Plaintiffs and Defendants are the only parties who will be affected by the issuance of a preliminary inunction the public interest, if any, is a neutral factor.  Stomans, Inc. v. Selecky, 586 F.3d  1109, 1139 (9th Cir. 2009)    In the opinion of this Court a preliminary injunction should issue to protect the Plaintiffs' home from foreclosure during further pretrial development of this case.

      For the foregoing reasons, It is **ORDERED** that Plaintiffs' request for the issuance of a Preliminary Injunction is **GRANTED** upon the same Bond as approved by the state court and posted by Plaintiffs.

It is further **ORDERED** that the Defendants, Bank of America, Wells Fargo Bank and ReconTrust Co., their officers, agents, employees and attorneys and all those in active concert or participation with them are hereby **ENJOINED** and **RESTRAINED** from posting for foreclosure sale, selling, transferring or otherwise encumbering the Plaintiffs real property located at <u>18921 Cammie Road in Galveston County, Texas</u>, more particularly described in County Deed Records as:

> 1.556 acre tract of land and being the west 250 feed of the east 450 feet of lot 6, in block 38, of Algoa suburbs addition, in Galveston County, Texas, according to the revised map thereof recorded in Volume 238, Page 1 of the map records and transferred to plat record 1, Map No. 1, 80th of the map records of Galveston County, Texas.  Also known as 18921 Cammie Road, Alvin, Texas 77511.

This Preliminary Injunction **SHALL CONTINUE** in full force and effect pending a trial on the merits or until further Order of this Court.

**DONE** at Galveston, Texas, this _____1st_____ day of August, 2012.

_____
John R. Froeschner
United States Magistrate Judge