IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| JOSH BELKNAP and<br>KATHERINE BOLAND BELKNAP,<br><br>    Plaintiffs,<br>v.<br><br>THE BANK OF AMERICA HOME LOANS,<br>RECONTRUST COMPANY, N.A.,<br>A SUBSIDIARY OF BANK OF AMERICA,<br>and WELLS FARGO BANK, N.A.,<br>AS TRUSTEE FOR THE CERTIFICATE<br>HOLDERS MERRILL LYNCH<br>MORTGAGE INVESTORS TRUST,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§    CIVIL ACTION NO. G-12-198<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is the Motion for Summary Judgment that was filed by Defendants Bank of America, N.A.[1], ReconTrust Company, N.A., and Wells Fargo, N.A., as Trustee for the Certificate Holders of Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-HE1. (Docket Entry ("Dkt.") No. 47). Plaintiffs Josh Belknap and Katherine Boland Belknap filed a response to the Motion (Dkt. No. 49), to which Defendants filed a reply. (Dkt. No. 50). The Court, after carefully considering the Motion, the response and reply, and the applicable law, concludes that Defendants' Motion for Summary Judgment should be **GRANTED** for all the reasons discussed herein.

---

[1] Bank of America was incorrectly named as "The Bank of America Home Loans." (Dkt. No. 47). The Court will refer to this Defendant as Bank of America.

1

## I. BACKGROUND

This action was brought by Plaintiffs Josh Belknap and Katherine Boland Belknap (hereinafter, "the Plaintiffs" or "the Belknaps") against Defendants Bank of America, N.A. ("BOA"), ReconTrust Company, N.A., a subsidiary of Bank of America ("ReconTrust"), and Wells Fargo Bank, N.A., as Trustee for the Certificate Holders Merrill Lynch Mortgage Investors Trust ("Wells Fargo") after their home, which is located in Galveston County, Texas (hereinafter "the Property"), was threatened with a foreclosure sale.

The evidence before the Court reflects that on December 3, 2004, the Belknaps obtained a mortgage to purchase the Property, secured by a Deed of Trust and a Promissory Note in the amount of $80,000.00 with an adjustable interest rate[2] in favor of the lender Fremont Investment & Loan. (Dkt. No. 47, Exs. A-1, A-2). The Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as nominee for the lender and Dennis P. Schwartz was listed as Trustee. (*Id.*). The Note and the Deed of Trust were later transferred to Wells Fargo, with BOA acting as the mortgage servicer. (*Id.*, Ex. A-3).[3] ReconTrust was subsequently appointed as the Substitute Trustee. (*Id.*, Ex. J).

In or around March 2010, the Belknaps defaulted on their loan payments. (*See* Dkt. No. 11, Ex. 3). BOA sent a letter to the Belkaps, which was dated April 2, 2010, to inform them that their loan was "in serious default" because the required payments had not been made on March

---

[2] The Belknaps agreed to an Adjustable Rate Note. According to the terms of the Note, the Belknaps interest rate was initially set at 7.69% and, while it could never fall below that rate, over the course of the loan the interest rate could rise to, but never exceed, 14.69%. (Dkt. No. 47, Ex. A-1). Based on an interest rate of 7.69%, the Belknaps initial monthly payments of principal and interest were calculated in the amount of $569.82. (*Id.*).

[3] The loan servicer is now Select Portfolio Servicing, Inc. ("SPS"). (Dkt. No. 47, Ex. A at ¶10).

2

1, 2010, and $1,270.00 was due. (Dkt. No. 11, Ex. 3; *see also*, Dkt. No. 47, Ex. A-4; Dkt. No. 42 at 35:9-11, 36:20 - 37:15). BOA advised the Belknaps that they needed to cure the default on or before May 2, 2010, or the Note would be accelerated and foreclosure proceedings would be initiated. (Dkt. No. 11, Ex. 3). The record reflects that BOA sent additional letters, dated May 3, 2010 and June 2, 2010, which reiterated to the Belknaps that they were in default and demanding that the default be cured on or before specified dates. (*Id.*, Ex. 4).

On or about April 1, 2010, Katherine Belknap contacted BOA to request a loan modification to secure a fixed rate of interest on their mortgage payments. (Dkt. No. 1 (Affidavit) at 2; Dkt. No. 42 (Katherine Belknap's testimony at hearing) at 9:15 - 10:3). According to Katherine Belknap, the BOA representative told her that she might qualify for a loan modification under the Making Home Affordable Program and agreed to send her an application for that loan modification program. (Dkt. No. 10, Ex. A-1). Once the Belknaps received the modification package from BOA, they completed the application and returned it to BOA. (*Id.*). Over the next ten (10) months, the Belknaps periodically contacted BOA to check on the status of their loan modification request. The Belknaps contend that BOA representatives told them that they did not have to make their regular loan payments while their loan was under review. (*Id.*).

On May 24, 2011, BOA sent the Belknaps a letter informing them that they were "eligible for a trial modification." (Dkt. No. 47, Ex. A-5). Accompanying the letter was a "Loan Modification Trial Period Plan" (hereinafter, "Trial Plan"). (*Id.*). The Trial Plan explained that this was the "first step" in the process of seeking loan modification and required the Belknaps to complete a three-month trial period payment plan (*i.e.*, July/August/September) by the designated due dates. The Trial Plan also included a number of "Additional Terms and Conditions," which

3

included: (1) an agreement by BOA to suspend, but not dismiss, any scheduled foreclosure sale or pending foreclosure proceedings during the Trial Plan period in the event that the Belknaps met their obligations under the Trial Plan; (2) an acknowledgment by the Belknaps that during the Trial Period, BOA could "accept and post" these payments to their account without constituting a waiver of the acceleration of their loan or foreclosure action and related activities and it would not constitute a cure of their default unless the payments were sufficient to completely cure the entire default; (3) an acknowledgment that the current or original loan documents remained in effect except that the Belknaps were permitted to make the payments set forth in the Trial Plan "instead of the payment required under [their] Original Loan Documents"; and (4) an understanding that following the Trial Plan, BOA would determine the amount and specific terms of any modification agreement. (*Id.*). The Belknaps were informed that if they were successful in making timely payments under the Trial Plan, BOA would extend an offer to them to modify their loan. Notably, the terms and/or details of any such future loan modification offer were not stated in the letter or the Trial Plan, but the Belknaps were advised that if an offer was extended it "would only remain in effect for 30 days" and, if not accepted, any offer of modification would terminate. (*Id.*). The Belknaps made each of the payments in accordance with the Trial Plan.

In a letter dated October 1, 2011, BOA informed the Belknaps that their request for permanent modification had been approved, but would not be valid until the two enclosed documents[4] were signed, notarized and returned with the requested certified funds.[5] (Dkt. No. 47,

---

[4] The two documents enclosed with the October letter were the "Rate Change Notice" and the "Loan Modification Agreement (Fixed Interest Rate)." (Dkt. No. 47, Ex. A-6).

[5] The letter reflected the amount added to the Belknaps' loan, detailed the amount of their new modified monthly payment ($958.84 of which principal and interest totaled $670.11), included a breakdown of any fees, charges or payments and reflected that the "Certified Funds" required were "0."

4

Ex. A-6). In addition, BOA advised that the modification offer was contingent on the Belknaps submitting copies of their most recent pay stubs, obtaining a lender's title insurance policy or endorsement, and "Bank of America, N.A. receiving relief from Automatic Stay for any bankruptcy in which the property referred to in the Loan Modification Agreement is included at the time of the modification." (*Id.*).

The Belknaps maintain that they did not receive BOA's October 1 letter until October 12, 2011, and, at that point, given the language in the "Rate Change Notice" (*i.e.*, stating that it was "null and void" if not signed and returned by October 11, 2011), the Belknaps believed that they were precluded from accepting the offer. As a result, the Belknaps never signed and returned either of the two documents to BOA. Instead, the Belknaps contend that they contacted BOA and requested that new documents be sent. In the meantime, the Belknaps assert that they continued making payments to BOA.[6]

Several months elapsed without an executed modification agreement in place, BOA's receipt of the Belknaps' current pay stubs or any indication that a lender's title policy had been obtained. Accordingly, in a letter dated February 22, 2012, BOA informed the Belknaps that it was returning "a total of $5730.00 in partial payments on your loan" because this amount represented "partial payments on your account [that was] not sufficient to satisfy the full delinquency due on your loan." (Dkt. No. 10, Ex. F). The Belknaps contacted BOA in an attempt to resolve the matter, but their efforts proved unsuccessful. Notwithstanding, the Belknaps attempted to make an additional payment, however, BOA returned the payment on

---

[6] The amount of the payments is not clear. It is also unclear when the payments were made and if timely. However, the evidence is clear that the payments were not sufficient to bring the note current.

5

March 22, 2012, and informed the Belknaps that it was unable to apply the amount because it did not represent the total payment due. (Dkt. No. 10, Ex. G). Thereafter, on or about April 10, 2012, the Belknaps received a Notice of Substitute Trustee's Sale from ReconTrust Bank of America informing them that their loan was in default and if not cured the Property would be sold at a foreclosure sale that was scheduled for June 5, 2012. (Dkt. No. 1 (Affidavit of Katherine Belknap) at 8). Although the Belknaps appear to have sent another payment, BOA returned the funds to them on or about May 1, 2012, and informed them that it would not accept any partial payments, but required payment of the full amount owed. (Dkt. No. 10, Ex. I).

On May 24, 2012, the Belknaps filed suit in state court, procured a Temporary Restraining Order (TRO) and posted the court-required bond. The June 5, 2012, foreclosure sale was cancelled. The TRO was then extended on June 6, 2012 to June 20, 2012. On June 29, 2012, the Defendants removed the action to federal court based on diversity jurisdiction. (Dkt. No. 1). Following the expiration of the TRO, no preliminary injunctive was sought by the Belknaps and the Defendants again posted the Property for sale at foreclosure sale on August 7, 2012. The Belknaps, once again, sought to enjoin the sale. After holding an evidentiary hearing on the Belknaps' request for a temporary injunction, the Court entered an order granting the injunction and enjoining and restraining Defendants from posting the Property for a foreclosure sale. (Dkt. No. 15). The Belknaps subsequently amended their complaint on November 2, 2012. (Dkt. No. 26). In their Amended Complaint, the Belknaps allege causes of action against the Defendant for breach of contract and promissory estoppel. (*Id.*).

While the litigation was pending, the Belknaps were sent another loan modification offer on April 5, 2013. (Dkt. No. 47, Ex. A-7). This loan modification offer included an interest rate

6

of 3.5% and new monthly payments of $636.60.[7] The Belknaps were advised that if they wanted to accept this offer that they needed to "sign both copies of the Agreement and return both copies no later than April 15, 2013." (Dkt. No. 47, Ex. A-7). The offer was not accepted.

The Defendants now move for summary judgment on all the Belknaps' claims. (Dkt. No. 47). The Belknaps filed a response in opposition (Dkt. No. 49), to which Defendants filed a reply. (Dkt. No. 50). Defendant's Motion for Summary Judgment is now ripe for consideration.

## II. STANDARD OF REVIEW

The Court analyzes the Defendants' Motion under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. Claims Against Defendant ReconTrust

The only causes of action the Belknaps have asserted against the Defendants in this action is for breach of contract and promissory estoppel. (Dkt. No. 26). Defendant ReconTrust contends that it is entitled to summary judgment because the Belknaps have failed to state any claims against it. (Dkt. No. 47 at 8). The Court agrees. The evidence in the record clearly reflects that ReconTrust was not a party to the contract or the alleged contract. Moreover, the Belknaps have not pleaded any facts establishing a claim against ReconTrust whose only role in this action is being named as the Substitute Trustee under the Deed of Trust.

---

[7] This amount reflects only principal and interest.

7

The Court, therefore, **GRANTS** the Defendants' Motion as to ReconTrust.

### B. Breach of Contract Claim

The Belknaps have alleged a breach of contract claim against the remaining Defendants BOA and Wells Fargo. In Texas, a plaintiff claiming breach of contract must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386 F.3d 386, 418 (5th Cir. 2009).

#### 1. The Original Loan

The Belknaps do not allege, nor does the evidence support, that the Defendants breached the original Promissory Note and Deed of Trust. On the contrary, the evidence before the Court reflects that by failing to pay their monthly payments beginning in March 2010, the Belknaps breached the contract by defaulting on their loan and that this breach preceded the Belknaps request for a loan modification. A fundamental principle under Texas law is that "[a] party to a contract who is in default cannot maintain a suit for breach of contract." *Gulf Pipe Line Co. v. Nearen*, 138 S.W.2d 1065, 1068 (Tex.1940); *see also, Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (same); *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) ("performance by the plaintiff" is required to establish a claim for breach of contract). Ordinarily, given the Belknaps' initial default,[8] they would not be entitled to maintain a cause of action for breach of contract based on the Promissory Note and Deed of Trust against the

---

[8] To the extent that the Belknaps were to argue that BOA told them not to make these payments while their loan was being considered for modification, the undisputed evidence reflects the default preceded their request for a loan modification and, perhaps more importantly, any agreements to defer payments under Note would require a written agreement, which the Belknaps concede does not exist. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256-57 (5th Cir. 2013).

8

Defendants. *Id.*

## 2. The Alleged Loan Modification

The Belknaps contend that the May and October 2011 letter from BOA established an enforceable agreement to modify their loan and Defendants breached this agreement when they failed to modify their loan, refused their payments in February 2012, and initiated foreclosure proceedings. Defendants argue that no enforceable agreement existed to modify the Belknaps loan and none which satisfies the Statute of Frauds.

### a. *Existence of a Valid Contract*

In Texas, a valid contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; (5) execution and delivery of the contract with the intent that it be mutual and binding; and (6) consideration. *Rice v. Metro Life Ins. Co.*, 324 S.W.3d 660, 670 (Tex.App.–Ft.Worth 2010, no pet.).

Unfortunately, for the Belknaps, neither of the letters constitutes a valid contract to modify their loan. Initially, with regard to the May 2011 letter, the essential terms required to constitute an offer to modify the loan are lacking. *See Hern Family Ltd. Partnership v. Compass Bank*, 863 F.Supp.2d 613, 623-24 (S.D.Tex. 2012) (does not constitute an offer to modify the loan because it lacked the essential terms required to constitute a loan modification). Although the October 2011 letter contains the essential terms required of an offer, there is no dispute that the offer was never accepted by the Belknaps in the manner directed by the offer (*i.e.*, initially, by signing and returning the documents to BOA; and then, by submitting their current income receipts or pay stubs to BOA, and by obtaining title insurance). The Belknaps counter that they believed that

9

BOA imposed a time and manner restriction on the acceptance of the offer which made it "impossible" for them to accept. Even assuming that this were the case,[9] then the offer would have expired on its own terms and, as such, there would be nothing for the Belknaps to accept – in short, there would be no enforceable contract. *Kurio v. U.S.*, 429 F.Supp.42, 64 (D.C.Tex. 1970) (recognizing that "a person making an offer is free to restrict the power of acceptance in any way, reasonable or unreasonable, that he may wish" and "[u]nless the offeree exercises his power of acceptance before it expires, there is no contract, for there is no power to accept").[10] Aside from these difficulties, the language contained in the letters--particularly the May letter–also evidence an intent by the Defendants not to be bound. *See Pennington v. HSBC USA, N.A.*, 493 Fed.Appx. 549, at *4 (5th Cir. 2012), *cert. denied*, _ U.S. _ 133 S.Ct. 1272, 185 L.Ed.2d 185 (2013) (concluding that the trial period plan "did not form a contract because the bank never expressed an intent to be bound" which is evidenced from its lack of signature on the modification agreement). In addition, the alleged agreement to modify the loan is not supported by new consideration. *See, Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex.Ct.App. 2008) ("[w]hen a party agrees to do no more than that which he is already bound to do under an

---

[9] The Belknaps contend that they did not receive the letter with the two documents until October 12, which was too late. In fact, the October 1, 2011 letter contained two (2) documents and only one of those documents – the one pertaining to the interest rate adjustment – was, on its face, time sensitive and required it be signed and returned by October 11 or it would be null and void. The second document, which was the loan modification agreement, did not include this language and, as was previously advised, the loan modification offer only expired if not signed and returned within 30 days.

[10] Notably, the Court in *Kurio* went on to explain that "a belated attempt to accept, although it could not by itself (or in conjunction with the original offer) create a contract, could ordinarily evidence a willingness to enter into a contract along the lines set out in the initial offer. It thus may well constitute a counteroffer, or stated differently, may create a power of acceptance exercisable by the original offeror." *Kurio*, 429 F.Supp. at 65. "If so, a contract will arise if conduct by the original offeror following receipt of the late acceptance amounts to an acceptance of the counteroffer implicit in the late attempt to accept."

existing contract, the consideration is not sufficient to support a modification."); *see also*, *Pennington*, 493 Fed.Appx. at 554-55 (recognizing when the mortgagor owed payments in excess of the proposed amounts, the acceptance of the payments by the mortgagee can reasonably be seen only as acceptance of partial payments on their regular mortgage payments); *Singh v. JP Morgan chase Bank, N.A.*, No. 4:11-CV-607, 2012 WL 3904827, at *3-4 (E.D.Tex. July 31, 2012) (trial-period payment plan was not consideration); *Rackley v. JPMorgan Chase Bank, Nat. Ass'n.*, Civil Action No. SA-11-CV-387-XR, 2011 WL 2971357, at *3-4 (W.D.Tex. July 21, 2011) (finding no contract formed with trial plans because there was a lack of new consideration).

### b. *Statute of Frauds*

The Statute of Frauds, which is strictly adhered to in Texas, provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing <u>and</u> signed by the party to be bound or that party's authorized representative." [Emphasis added]. TEX. BUS. COM. CODE § 26.02(b); *see also*, *Williams v. Wells Fargo Bank, N.A.*, _ Fed.Appx._ 2014 WL 1044304, at *4 (5th Cir. March 19, 2014). The law also requires that when a modification relates to a matter that must be in writing, the modification must also be in writing. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256-57 (5th Cir. 2013); *see also*, *Williams*, 2014 WL 104434, at *4 (recognizing "[t]he statute of frauds also applies to preclude enforcement of oral modifications to loan agreements"); *Bank of Texas N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.-Dallas, 2009, review dism'd w.o.j.) (any verbal representation, which purports to alter the terms of a written loan agreement that exceeds $50,000 in value, is unenforceable under the Texas Statute of Frauds ); *Deuley v. Chase Home Finance, LCC*, No. 4:05-CV-04253, 2006 WL 1155230, at *2 (S.D. Tex. April 26,

2006) (explaining that under Texas law when an agreement purports to modify an agreement that must be in writing, the modification must also be in writing or it is unenforceable).

In the present case, even assuming the letters were sufficient to support a valid contract to modify the Belknaps' loan agreement, the agreements were not signed by the parties and, as such, would violate the Statute of Frauds. *See Hugh Symons Group, PLC v. Motorola Inc.*, 292 F.3d 466, 469 (5th Cir. 2002) (the burden of proving the Statute of Frauds has been satisfied rests on the party seeking to enforce the alleged contract and, when the party fails to meet this burden, it is fatal to his breach of contract claim).[11]

Accordingly, the Court concludes that the Defendants' Motion for Summary Judgment on the Belknaps' breach of contract claim must be **GRANTED**.

### C. Promissory Estoppel

As an alternative to their breach of contract claim, the Belknaps assert that Defendants are liable for damages under a promissory estoppel theory. "Under Texas law, although promissory estoppel is primarily a defensive theory, it is also available as a cause of action for a 'promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise.'" *Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed.Appx. 361, 365 (5th Cir. 2013) (quoting *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex.App.–Corpus Christi 2001, no pet.)). The elements of a promissory estoppel claim are: (1) a promise; (2) reliance thereon that was

---

[11] There are, of course, exceptions that the law recognizes to the defense of the Statute of Frauds, which include promissory estoppel. *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 268-69 (Tex.App.–Corpus Christi 1994, pet. denied). However, as will be discussed below, in addition to a plaintiff being able to show the requisite elements of promissory estoppel, Texas law requires that a plaintiff also be able to establish that the defendant promised to sign an agreement satisfying the statute of frauds. *"Moore" Burger, Inc. v. Phillips Pet. Co.*, 492 S.W.2d 934, 937 (Tex. 1972). There is no evidence in the record to support this requisite element.

foreseeable to the promisor; and (3) substantial reliance by the promisee to his detriment." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983)). However, "[a]s when promissory estoppel is used as a defense, if the underlying oral promise is barred by the statute of frauds, the plaintiff must show that the promisor promised to sign a written document that would satisfy the statute of frauds." *Ford*, 44 S.W.3d at 140.

In the present case, to prevent summary judgment on this claim, the Belknaps must provide some evidence that the Defendants made an oral promise to sign the written agreement or represented to them that the statute of frauds had been satisfied. Problematically, for the Belknaps, they have failed to do so. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) ("For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds."); *Montalvo v. Bank of America Corp.*, No. SA-10-CV-360-XR, 2013 WL 870088, at *11 (W.D.Tex. March 7, 2013) (concluding that "no evidence existed that the Defendants promised to execute a writing that satisfied the statute of frauds, nor is there evidence that Defendants represented that the statute of frauds had been satisfied.")

Nevertheless, even if the Belknaps could establish that the Defendants promised to sign the document or represented to them that the statute had been satisfied, to avoid summary judgment on this claim, they would have to offer some evidence of damages that resulted from their reliance on any alleged promise made by the Defendants. *See Watson v. CitiMortgage, Inc.*, 530 Fed.Appx. 322, 327-28 (5th Cir. 2013 (upholding finding that no genuine issue of material fact

13

existed as to promissory estoppel where plaintiffs did not explain whether any damages resulted from their reliance on any promises by the lender); *Shatteen v. JP Morgan Chase Bank, N.A.*, 519 Fed.Appx. 320, 322 (5th Cir. 2013).

According to the Fifth Circuit, "[r]eliance damages cover expenditures made in preparation for performance or in performance, and essentially seek to restore the status quo by putting the injured party in the position he would have been in had the contract not been formed." *Waltner v. Aurora Loan Serv., L.L.C.*, 2013 WL 6858124, at *3-4 (5th Cir. 2013). As evidence of their damages the Belknaps rely on the trial payments they made, the loss of use of the property – both as a rental property or for personal use – a loss of equity in the house, an increase in loan balance, a negative impact on their credit, and the fact that they did not look for alternate living arrangements or seek to obtain a loan from a different lender. This is simply not enough. Instead, after setting aside any damages based purely on speculation, the undisputed evidence before the Court reflects that, absent any promise to modify their loan, they would still have been in default and, as they conceded, they did not have the funds to bring their loan current. *See Id.* at *4 (holding that "[a]bsent the promise to modify their loan, the Waltners would still have been in default … [and] any award of damages by the jury would be based on pure speculation.").

Finally, to the extent the Belknaps seek specific performance on the promise to modify their loan, the record before the Court reflects that they have not and cannot tender the amount that would be due under the loan modification. *DiGuiseppe v. Lawler*, 269 S.W.3d 588, 593-94 (Tex. 2008) (a plaintiff seeking specific performance must, as a prerequisite, actually tender performance). Moreover, they were subsequently offered what appears to be a more favorable loan modification, but they refused to accept it.

14

Therefore, the Court concludes that the Defendants' Motion for Summary Judgment must be **GRANTED** on this claim.

## CONCLUSION

Accordingly, for all the foregoing reasons, it is the **ORDER** of this Court that Defendants Bank of America, N.A.'s, ReconTrust Company, N.A., and Wells Fargo, N.A., as Trustee for the Certificate Holders of Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-HE1's Motion for Summary Judgment (Doc. No. 47) is **GRANTED** in its entirety and that Plaintiffs Josh Belknap and Katherine Boland Belknap's action is **DISMISSED WITH PREJUDICE**.

It is the further **ORDERED** that the injunction, which the Court previously imposed, is **LIFTED** as this matter is now **MOOT**.

**IT IS SO ORDERED.**

**DONE** at Galveston, Texas, this \_\_\_\_11th\_\_\_\_ day of June, 2014.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE